No. 22-1447

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

**WILFRED D. BEAN,**
Claimant-Appellant,

v.

**DENIS MCDONOUGH**,
**SECRETARY OF VETERANS AFFAIRS**,
Respondent-Appellee.

Appeal from the United States Court of Appeals
for Veterans Claims in Case No. 19-4116,
Judge Coral W. Pietsch

**APPELLANT'S BRIEF**

JENNIFER A. ZAJAC
LINDA E. BLAUHUT
PARALYZED VETERANS OF AMERICA
801 18th Street, NW
Washington, DC 20006
(760) 639-0765

April 4, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 22-1447 |
| **Short Case Caption** | Bean v. McDonough |
| **Filing Party/Entity** | Wilfred D. Bean |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/07/2022

Signature: /s/ Jennifer A. Zajac

Name: Jennifer A. Zajac

i

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Wilfred D. Bean | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Stiles v. McDonough, CAVC Docket No. 20-3523 | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................................... i

TABLE OF CONTENTS ........................................................................... iv

TABLE OF AUTHORITIES ....................................................................vii

STATEMENT OF RELATED CASES ................................................... xi

JURISDICTIONAL STATEMENT ......................................................xii

STATEMENT OF THE ISSUES ..............................................................1

STATEMENT OF THE CASE ..................................................................2

    I. NATURE OF THE CASE ..................................................................2

        A. Statement of Facts and Course of Proceedings Prior to the Appeal to the Veterans Court. ...................................................................................2

        B. Mr. Bean's Appeal and Petition to the Veterans Court. ...........................11

            1. Mr. Bean's Petition for a Writ of Mandamus and the Veterans Court's April 27, 2020 Decision on the Petition. .............................................11

            2. The Veterans Court's April 28, 2020, Single-Judge Memorandum Decision and the Secretary's Motion for Reconsideration. ..................13

            3. The Veterans Court's December 30, 2021, Single-Judge Memorandum Decision. ......................................................................................14

SUMMARY OF ARGUMENT ...............................................................15

ARGUMENT .......................................................................................16

    I. STANDARD OF REVIEW ...............................................................16

    II. THE VETERANS COURT'S DECISION IGNORES THE APPLICABLE STATUTES. ...............................................................................17

A. The Veterans Court Had Jurisdiction to Address the Constitutional Issue Raised. ...............................................................................................18

B. VA's Own Statutes Provided the Veterans Court with Jurisdiction Over the Issue Raised by Mr. Bean on Appeal. ...............................................19

III. THE VETERANS COURT'S SINGLE-JUDGE DECISION IGNORES DECADES WORTH OF ITS OWN PRECEDENT WITH NO EXPLANATION FOR WHY OR HOW IT HAS THE AUTHORITY TO DO SO. ..................................................................................................21

A. The Veterans Court Ignored a Directly Applicable Panel Decision. ......23

1. By a Panel Decision, the Veterans Court Has Held It Has Jurisdiction to Address Situations Where Appellants Assert the Board Failed to Address Their Claims of Unadjudicated, Pending Claims. ...............23

2. Mr. Bean Has Unadjudicated, Pending Claims. .................................25

B. In *Travelstead* and Its Progeny, the Veterans Court Specifically Held that It Had Jurisdiction to Address Whether the Board Ignored a Reasonably Raised Issue that Was Before the Secretary and the Veterans Court Offered No Explanation for Why This Precedent Should Not Be Followed. ..........................................................................................28

IV. THE VETERAN COURT'S DECISION ALLOWS THE VA TO PICK AND CHOOSE WHAT TO ADDRESS, INSTEAD OF VA HAVING THE RESPONSIBILITY TO REVIEW THE ENTIRE CLAIMS FILE. ............32

V. COLLATERAL ESTOPPEL PREVENTED THE VETERANS COURT FROM RELITIGATING THE ISSUE OF JURISDICTION BECAUSE ITS DECISION ON THE WRIT SET PARAMETERS THAT BOUND THE COURT IN THE DECISION ON THE MERITS. .....................................35

VI. THE SECRETARY'S FAILURE TO ADJUDICATE MR. BEAN'S CLAIMS FOR ALMOST 25 YEARS VIOLATES HIS CONSTITUTIONAL DUE PROCESS RIGHTS. .......................................38

CONCLUSION AND RELIEF SOUGHT ...........................................................43

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Shinseki*, 568 F.3d 956 (Fed. Cir. 2009) ...............................................26

*Amouri v. Holder*, 572 F.3d 29 (1st Cir. 2009) ...............................................16

*B&B Hardware, Inc. v. Hagris Industries, Inc.*, 575 U.S. 138 (2015) ...................36

*Barrett v. Nicholson*, 466 F.3d 1038 (Fed. Cir. 2006) .....................................32, 35

*Bell v. Derwinski*, 2 Vet.App. 611 (1992) ...............................................25

*Bethea v. Derwinski*, 2 Vet.App. 252 (1992) ...............................................22, 31, 32

*Bowen v. Mich. Academy of Family Physicians*, 476 U.S. 667 (1986) .................18

*Buckley v. West*, 12 Vet.App. 76 (1998) ...............................................28

*Califano v. Sanders*, 430 U.S. 99 (1977) ...............................................18

*Chakir v. Gonzales*, 466 F.3d 563 (7th Cir. 2006) .....................................17

*City of Los Angeles v. David*, 538 U.S. 715 (2003) ...................................41

*Clemons v. Shinseki*, 23 Vet.App. 1 (2009) ...............................................25

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ..............................42

*Cogburn v. Nicholson*, 19 Vet.App. 427 (2006) .......................................33

*Cogburn v. Shinseki*, 24 Vet.App. 205 (2010) .......................................23, 24, 27

*Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002) ...................17

*Cromley v. Brown*, 7 Vet.App. 376 (1995) .......................................29, 30

*Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009) ..............................17, 38, 39

*Davidson v. Shinseki*, 581 F.3d 1313 (Fed. Cir. 2009) ..............................32

*Davis v. Passman*, 442 U.S. 228, 241-5 (1979) .......................................42

*Denko v. INS*, 351 F.3d 717 (6th Cir. 2003) ..........................................................17

*Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006) ..........................................26

*DiCarlo v. Nicholson*, 20 Vet.App. 52 (2006) ...............................................7, 25, 33

*Edwards v. Shinseki*, 582 F.3d 1351 (Fed. Cir. 2009) .............................................38

*Elkins v. Derwinski*, 2 Vet.App. 422 (1992) .........................................................29

*Evans v. McDonald*, 27 Vet.App. 180 (2014) ...................................................11, 12

*Fadiga v. Atty Gen. of the U.S.*, 488 F.3d 142 (3d Cir. 2007) ...............................16

*FDIC v. Mallen*, 486 U.S. 230 (1988) ...................................................................39

*Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344 (Fed. Cir. 2002) ..................20

*Flores v. Ashcroft*, 354 F.3d 727 (8th Cir. 2003) ..................................................17

*Frankel v. Derwinski*, 1 Vet.App. 23 (1990) .............................................14, 22, 27

*Fusari v. Steinberg*, 419 U.S. 379 (1975) ........................................................40, 42

*Howard v. Gober*, 220 F.3d 1341 (Fed. Cir. 2000) ...............................................16

*Ingram v. Nicholson*, 21 Vet.App. 232 (2007) .................................................7, 8, 26

*Isaacs v. Bowen*, 865 F.2d 468 (2d Cir. 1989) ......................................................39

*Johnson v. Hugo's Skateway*, 949 F.2d 1338 (4th Cir. 1991) ...............................17

*Johnston v. IVAC Corp.*, 885 F.2d 1574 (Fed. Cir. 1989) ...............................21, 31

*Jones v. Shinseki*, 23 Vet.App. 122 (2009) ...........................................................26

*Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) .......................................18

*Kelly v. RR Retirement Bd.*, 625 F.2d 486 (3d Cir. 1980) .....................................41

*Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015) ..........................21, 31

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ...........................................................21, 31

*Ledford v. West*, 136 F.3d 776 (Fed. Cir. 1998) ...................................................32

*Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000) .......................................20, 21, 32

*Martin v. O'Rourke*, 891 F.3d 1338 (Fed. Cir. 2018) ......................................41, 42

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................................38, 39, 42

*Matter of Smith*, 10 Vet.App. 311 (1997) ..............................................................31

*MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373 (Fed. Cir. 2018) .................37

*Michigan v. Bay Mills Indian Cmty*, 572 U.S. 782 (2014) ...................21, 23, 24, 27

*Monk v. Shinseki*, 855 F.3d 1312 (Fed. Cir. 2017) ...............................................35

*Murray v. Shinseki*, 24 Vet.App. 420 (2011) ........................................................40

*N. Ga. Elec. Membership Corp. v. City of Calhoun, Ga.*, 989 F.2d 429 (11th Cir. 1993) ..................................................................................................................36

*NLRB v. J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258 (1969) ......................................40

*Owens v. Brown*, 7 Vet.App. 429 (1995) .........................................................30, 34

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979) ...................................37

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) ........................................................21

*Richardson v. Nicholson*, 20 Vet.App. 64 (2006) .................................................12

*Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074 (10th Cir. 2006) .............17

*Schroeder v. City of Chicago*, 927 F.2d 957 (7th Cir. 1991) .................................38

*Slaughter v. McDonough*, -- F.4d --, slip op.  (Fed. Cir. March 30, 2022) ...........35

*Smith v. Berryhill*, 139 S. Ct. 1765 (2019) ...........................................................20

*SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341 (Fed. Cir. 2021) ...............................12

*Travelstead v. Derwinski*, 1 Vet.App. 344 (1991) ...........................................28, 29

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) .....................................17

*White v. Mathews*, 559 F.2d 852 (2d Cir. 1977) ...................................................43

*William Jefferson & Co., Inc. v. Bd. of Assessment & Appeals No. 3*, 695 F.3d 960, 963 (9th Cir. 2012) ....................................................................................16

*Wolfe v. Wilkie*, 32 Vet.App. 1 (2019) ......................................................22, 31

**Statutes and Regulations**

28 U.S.C.A. § 1651 (West 2014) ...............................................................37

38 U.S.C.A. § 7104 (West 2014) ...............................................................20

38 U.S.C.A. § 7105 (West 2002) ..................................................19, 20, 32

38 U.S.C.A. § 7252 (West 2014) ...............................................................21

38 U.S.C.A. § 7261 (West 2014) .........................................................18, 19

38 U.S.C.A. § 7292 (West 2014) .........................................................19, 21

38 C.F.R. § 3.103 (2021) .......................................................................32, 35

38 C.F.R. § 4.130 (2019) ..............................................................................5

**Other Authorities**

Catch-22, MERRIAM-WEBSTER DICT., *available online at https://www.merriam-webster.com/dictionary/catch-22* (last visited March 9, 2022)........................*32*

Charles Alan Wright & Arthur R. Miller, 18B FEDERAL PRAC. & PROC. § 4475 (2d ed. April 2021 Update) ..........................................................................37

U.S. CONST. amend V ..................................................................................38

U.S. Vet.App. R. 35 .....................................................................................14

VA priority groups, Eligibility, Health Care, DEP'T OF VETERANS AFFAIRS, *available at https://www.va.gov/health-care/eligibility/priority-groups/* (last visited March 9, 2022) ..............................................................................40

**STATEMENT OF RELATED CASES**

No other appeal in or from the proceeding in the lower court was previously before this or any other appellate court.

Mr. Bean is aware of one case that could be directly affected by this court's decision in the pending appeal: *Stiles v. McDonough*, CAVC Docket No. 20-3523.

# JURISDICTIONAL STATEMENT

The appellant, Wilfred D. Bean, timely appeals the December 30, 2021, decision of the U.S. Court of Appeals for Veterans Claims (Veterans Court), giving this court jurisdiction to hear his appeal under 38 U.S.C.A. § 7292. He timely filed his Notice of Appeal on February 7, 2022, in accordance with 38 U.S.C.A. § 7292(a).

Mr. Bean asks the court to exercise its jurisdiction to review the Veterans Court's decision "with respect to the validity of a decision of the Court on a rule of law or of any statute . . . or any interpretation thereof." 38 U.S.C.A. § 7292(a) (West 2014).

Mr. Bean also asks the court to also exercise its "exclusive jurisdiction . . . to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C.A. § 7292(c); *see also* 38 U.S.C.A. § 7292(d)(1).

# STATEMENT OF THE ISSUES

1. Whether the U.S Court of Appeals for Veterans Claims erred when it held it did not have jurisdiction to consider whether the Board of Veterans' Appeals erred when it did not address Mr. Bean's claim that he had unadjudicated, pending claims for service connection for major depressive disorder and anxiety.

2. Whether the Secretary of Veterans Affairs has violated Mr. Bean's Fifth Amendment Due Process rights by failing to adjudicate specifically raised claims for almost 25 years.

**STATEMENT OF THE CASE**

## I. NATURE OF THE CASE.

Mr. Bean appeals a final U.S. Court of Appeals for Veterans Claims (Veterans Court) decision that dismissed his appeal of a May 10, 2019, Board of Veterans' Appeals (Board or BVA) decision.

### A. Statement of Facts and Course of Proceedings Prior to the Appeal to the Veterans Court.

Mr. Bean served honorably in the U.S. Army from November 1966 to November 1969, with service in Vietnam for almost a year. Appx0526. He received a National Defense Service Medal, a Vietnam Service Medal with four Bronze Service Stars, a Vietnam Campaign Medal with device, and a Good Conduct Medal, among others. *Id.*

While in Vietnam, Mr. Bean experienced several traumatic events, including being mistaken for a member of the Viet Cong. Appx0527-0534, Appx0647. Once stateside, he sought medical attention for nervousness and was diagnosed with anxiety reaction disorder *while still in the Army*. Appx0083, Appx0084.

A little over 25 years later, a VA therapist referred Mr. Bean to a VA Vet Center for evaluation for depression and a determination whether medication was appropriate. Appx0520-0534. On February 24, 1997, Mr. Bean applied for compensation benefits for post-traumatic stress disorder (PTSD), chloracne, and sarcoma. Appx0842-045. He submitted to several examinations, including a VA

Compensation & Pension (C&P) examination for PTSD.  Appx0745-0748.  The

VA psychiatrist did not diagnose Mr. Bean with PTSD at that time, but did

diagnose him with major depressive disorder and generalized anxiety.  *Id.* This

examination was made a part of the VA claims file.

The VA Regional Office (RO) denied Mr. Bean's claims for service

connection for PTSD, chloracne, and sarcoma on July 11, 1997, finding that Mr.

Bean did not have a current diagnosis for the three specific conditions listed.

Appx0741–0743.  With regard to PTSD, the RO noted that Mr. Bean had been

diagnosed with depression and anxiety, *not* PTSD.  *Id.*  The RO did not discuss

whether Mr. Bean could receive service connection for either generalized anxiety

or major depressive disorder, nor did the RO discuss that he had been diagnosed

with nervousness while in service.  *Cf. id.*  Mr. Bean did not appeal.

On August 14, 2006, Mr. Bean made an informal claim for service

connection for an acquired psychiatric disorder *to include major depressive*

*disorder and generalized anxiety disorder* and/or PTSD.  Appx0658.  He then

submitted a formal claim in January 2007, Appx0640-0657, as well as a statement

from his wife and from his VA psychiatrist.  Appx0647, Appx0659-0662.

Specifically, the VA psychiatrist noted Mr. Bean suffers from "severe depression

and anxiety *which started while he was serving in Vietnam and has been present*

*consistently since that time*."  Appx0647 (emphasis added).  The VA psychiatrist

continued that Mr. Bean "has developed chronic major depression and dysthymic disorder *in addition* to the PTSD and remains disabled by both of these problems. Mr. Bean sought treatment while in the military and many times in the intervening years with only partial improvement in symptoms." *Id.* (emphasis added).

The RO sent Mr. Bean a Veterans Claims Assistance Act of 2000 letter on June 12, 2007. Appx0626-0620. The letter acknowledged that Mr. Bean had made three separate claims: (1) service connection for major depression, (2) service connection for generalized anxiety disorder, and (3) a request to reopen his claim for service connection for PTSD. *Id.* The RO then had Mr. Bean submit to a second C&P examination for PTSD on July 11, 2007. Appx0561-0549.

While not the clearest of opinions, the VA clinical psychologist diagnosed Mr. Bean with PTSD *and* major depressive disorder. Appx0563. The VA clinical psychologist noted that Mr. Bean "started having problems with anxiety right after Vietnam and [he] believe[d] that this was the initial stage of [Mr. Bean's] posttraumatic stress disorder symptoms. Because of [Mr. Bean's] anxiety *and* most likely posttraumatic stress disorder symptoms, he was not able to promote in his job." *Id.* (emphasis added).

On October 4, 2007, the RO granted service connection for PTSD, at 30%, effective August 14, 2006, the date the RO received the informal claim. Appx0512-0515. The decision acknowledges that, while the RO had not

4

confirmed Mr. Bean's in-service stressors, Mr. Bean had been "treated for anxiety reaction in service, which is evidence that [he] suffered from a psychiatric condition during military service." *Id.* The decision did not separately address whether Mr. Bean should be service connected for generalized anxiety or major depressive disorder.[1]

Mr. Bean filed his Notice of Disagreement (NOD) on November 29, 2007. Appx0502. He explained he was in disagreement with both the rating itself and the effective date of his grant for service connection for PTSD. *Id.* He also noted he would "provide a Supplemental Statement of the Claim in the near future detailing my contentions of the above issues." *Id.*

He did so on December 8, 2007. Appx0487-0488. Mr. Bean explained

> that the onset of my disability was shortly after I returned from Vietnam as is demonstrated by the fact that I received treatment for symptoms [of] an acquired psychiatric disorder while stationed at Ft. Bliss, TX following my return from Vietnam. As the evidentiary record reflects, I have experienced these symptoms since my discharge from military service as documented in my

---

[1] The VA rates generalized anxiety disorder under Diagnostic Code (DC) 9400, Posttraumatic stress disorder under DC 9411, and major depressive disorder under DC 9434. 38 C.F.R. § 4.130 (2019). While the General Rating Formula for Mental Disorders applies to all three of these DCs, and Mr. Bean may have some overlapping symptomatology, they are distinct medical diagnoses and therefore can – and should – be separately rated. *Boggs v. Peake*, 520 F.3d 1330, 1336-37 (Fed. Cir. 2008); *see Buie v. Shinseki*, 24 Vet.App. 242, 250 (2010) (reiterating the Secretary has a duty to maximize a veteran's benefits).

treatment records from Kaiser Permanente and the VA in Martinez and Concord.

*Id.*

Mr. Bean contended his "claim for service connection for Post Traumatic Stress Disorder (PTSD) constituted a claim for an acquired psychiatric disorder to include major depression and generalized anxiety disorder as document in the evidentiary records to include on the VA examination of June 26, 1997." *Id.* He also added the "VA rating decision of July 11, 1997 made no mention of the symptoms [he] experienced in service or following service, nor does it make reference to any psychiatric diagnoses other than PTSD." *Id.*

Finally, he argued "that the evidentiary record at the time the July 11, 1997 decision was made documented the fact that [he] was suffering from an acquired psychiatric disorder, specifically major depression and generalized anxiety disorder" and that he believed "the VA's failure to consider service connection for these conditions, either through a formal decision or by not requesting a VA examination to include the relationship of these conditions to the symptoms [he] experienced in service, constitute[d] a unadjudicated (pending) claim in accordance with 38 CFR 3.160(c)." Appx0488.

The RO issued a Statement of the Case on June 11, 2008. Appx0461-0483. In it, the RO denied a higher rating and an earlier effective date for service connection for PTSD, explaining that Mr. Bean had specifically made a claim for

6

service connection for PTSD in 1997, which had been denied, and he had not appealed that decision; therefore, an earlier effective date was not warranted. *Id.* Mr. Bean submitted his Substantive Appeal two months later, in which he continued to disagree with the rating and once again argued that he had unadjudicated, pending claims for service connection for generalized anxiety and major depressive disorder for years. Appx0455-0457.

In May 2010, Mr. Bean submitted to another C&P examination for PTSD. Appx0421-0425. Less than two weeks later, the RO increased his rating to 70%, effective April 30, 2010. Appx0407-0411. Mr. Bean appealed, arguing his effective date for the 70% should be 2006. Appx0390-0391.

On appeal, the May 2012 Board agreed that Mr. Bean should have received the 70% rating back to 2006. Appx0319-0339. The Board then analyzed whether Mr. Bean was entitled to an earlier effective date for service connection for PTSD and found that there was no basis to provide that, as the effective date was the date he requested to reopen his claim for service connection for PTSD. *Id.*

The Board also acknowledged that Mr. Bean had claimed that he had unadjudicated, pending claims, but stated that the appropriate way to challenge that

would be through a motion for revision based on clear and unmistakable error

(CUE), not seeking an earlier effective date.[2]  *Id.*

In accordance with the Board's suggestion and without the benefit of an

attorney, Mr. Bean submitted a Motion for Revision Based on Clear and

Unmistakable Error to the RO on July 26, 2012.  Appx0310.  He explained,

> as I previously testified [to] the VA (please see my Notice
> of Disagreement (NOD) and Statement in Support of
> Cliam [(sic)] to supplement my NOD and my Substantive
> Appeal it is my contention that my original claim for
> service connection for PTSD constituted a claim for an
> acquired psychiatric disability to include generalized
> anxiety disorder, major depression and/or PTSD.  . . .
> Since the BVA failed to address my contention I am
> requesting the VA Regional Office reconsider the issue of

---

[2] Under the laws governing CUE, this is incorrect.  *See Ingram v. Nicholson*, 21 Vet.App. 232 (2007); *DiCarlo v. Nicholson*, 20 Vet.App. 52, 56-57 (2006).  In *Ingram,* after discussing the history of the pending claim doctrine and the Federal Circuit's decisions in *Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006) and *Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005), the Veterans Court explained that the "Secretary's failure to adjudicate a reasonably raised claim can be the basis of a CUE motion as to a final decision of the Secretary *where the issue was relevant to a decision actually made.*"  *Ingram* , 21 Vet.App.at 254-55 (emphasis added).  However, the Veterans Court continued, it must be "reasonable to expect the claimant to know that his claim was implicitly denied by the action taken by the RO on a related claim."  *Id.* at 255.

It is not reasonable to expect that Mr. Bean would have understood that his claim for service connection for generalized anxiety and depression "was implicitly denied" when the Regional Office denied his claim for service connection for PTSD in July 1997.  *See id.*  Mr. Bean's claim for service connection for PTSD was denied because he did not have a current diagnosis of PTSD.  *See* Appx0741-0743.  Mr. Bean had a current diagnosis of generalized anxiety and major depressive disorder, Appx0745-0748, and had been diagnosed with anxiety reaction disorder while still in the Army.  Appx0083, Appx0084.

the effective date assigned for my SC PTSD as stated above.

Appx0310; *see* Appx0487-0488, Appx0502.

On September 10, 2012, the RO implemented the Board's grant of an earlier effective date for the award of 70%. Appx0304-0309. One year later, on September 23, 2013, the RO denied Mr. Bean's claim for an earlier effective date for service connection for PTSD, as opposed to addressing his motion for revision. Appx0251-0252.

Mr. Bean appealed the September 23, 2013, rating decision, again without the benefit of an attorney, and specifically referred back to his July 2012 statement, which references his original NOD as well. Appx0238; *see* Appx0310, Appx0487-0488, Appx0502. He filed a Substantive Appeal on October 16, 2015, in which he explained he was "in continued disagreement with the VA's denial of an earlier effective for service connection (SC) for [his] acquired psychiatric disorder." Appx0049. He continued that he

> contend[ed] my claim of February 12, 1997 constituted a claim for an acquired psychiatric disability to include generalized anxiety disorder and major depression as well as Post Traumatic Stress Disorder. It [was] my further contention that given the psychiatric symptomatology that was manifested in my military service treatment records to include persistent nervousness as well [as] the diagnoses of generalized anxiety disorder and major depression on the VA C&P examination of 6/26/1997 the VA erred in not addressing

> the issue of service connection for generalized anxiety disorder and major depression.

*Id.* He concluded by stating "the VA failure to [address the issue] constitutes an un-adjudicated claim as stated in 38 CFR 3.160(c)." *Id.*

In May 2019, the Board dismissed Mr. Bean's appeal. Appx0019. Explaining that there was a "complicated procedural history," the Board outlined the steps that had happened since July 1997, noting that in July 2012, Mr. Bean "argued that the [May 2012] Board should have considered whether he should have been service-connected for depression and anxiety from 1997 since his original claim had been for an 'acquired psychiatric disorder' and not just PTSD therefore it remained an unadjudicated claim."[3] Appx0020-0021. The Board then found that Mr. Bean's "current claim arose from a Notice of Disagreement (NOD) he submitted to the September 2013 RO decision regarding the Veteran's request for 'reconsideration' sent to the RO in July 2012." Appx0021. It held "the issue on appeal has already been addressed by the Board in a final, unappealed decision, and cannot be revisited in the absence of a motion for reconsideration or a motion of CUE in the May 2012 Board decision." Appx0021-0022. Finally, the Board held Mr. Bean "cannot file a freestanding claim for an earlier effective date." Appx0023 (citing *Rudd v. Nicholson*, 20 Vet.App. 296 (2006)).

---

[3] The Board did not acknowledge that Mr. Bean had previously raised the issue in his 2007 Notice of Disagreement and his Substantive Appeal.

**B.  Mr. Bean's Appeal and Petition to the Veterans Court.**

Mr. Bean appealed the May 2019 Board decision to the Veterans Court and retained undersigned counsel through the Veterans Consortium Pro Bono Program. *See* Appx011-014.

**1.  Mr. Bean's Petition for a Writ of Mandamus and the Veterans Court's April 27, 2020 Decision on the Petition.**

After reviewing the claims file and speaking with the VA, undersigned counsel for Mr. Bean sought a stay of his appeal of the May 2019 Board decision and filed a Petition for Writ of Mandamus, asking the Veterans Court to compel the VA to adjudicate his pending claims for service connection for generalized anxiety and major depression disorder.  *See id.*; Appx1013-1033.  On March 10, 2020, the Veterans Court ordered the Secretary to file a response to Mr. Bean's petition.

Unrelated to the writ petition,[4] but while the writ petition was pending, the RO conducting a "special review," in light of the May 2019 Board decision, and assessed whether "rating decision approved July 11, 1997 contained a clear and unmistakable error by not applying 38 C.F.R. [§ 3.160(c)]."[5,6]  Appx1040-1042.

---

[4] The evidence considered did not list anything after the May 2019 Board decision.

[5] Counsel has corrected the quote to reflect the correct regulatory provision, since VA had originally cited to 38 C.F.R. § 3.106(c), which is inapplicable here.

The RO determined that *Mr. Bean* had not claimed service connection for anxiety or depression. *Id.* The RO then concluded that the "Rating decision approved July 11, 1997 does not contain a clear and unmistakable error."[7] *Id.*

Based on the issuance of this decision, the Secretary responded to the Veterans Court's order that the petition should be dismissed as moot. Mr. Bean disagreed, explaining that the petition was not moot, as the April 2020 RO decision did not address whether Mr. Bean had pending, unadjudicated claims, only whether the July 1997 decision contained CUE by not considering 38 C.F.R. § 3.160(c). *See Evans v. McDonald*, 27 Vet.App. 180, 191 (2014) (Kasold, J.,

---

[6] It should also be noted that the way the Regional Office (RO) phrased the issue is a procedural impossibility. Mr. Bean argues his 1997 claims are still pending; since those are his *original* claims, it would be impossible for the RO to find that the July 1997 decision erred by not considering whether there were *pending* claims in 1997.

Additionally, the Veterans Court has acknowledged that whether an earlier decision contains a CUE is an entirely separate question from whether there is an unadjudicated, pending claim. *See Evans v. McDonald*, 27 Vet.App. 180, 191 (2014) (Kasold, J., concurring) (explaining "an assertion that an issue was *not* adjudicated is distinct from an assertion that an issue was *wrongly* adjudicated").

[7] The Veterans Court has also held that "a claimant may assert that VA failed to adjudicate a reasonably raised claim in the context of a request for revision of a prior decision on the basis of CUE," and in those instances, the first step for the VA is to determine whether the claim was reasonably raised and, if so, whether it is pending, as there "is no claim to revise" if it remains pending. *Richardson v. Nicholson*, 20 Vet.App. 64, 71-72 (2006). As noted above though, the April 2020 RO did not undertake this analysis. It did not consider whether the claim was reasonably raised; it simply stated that *Mr. Bean himself* "did not claim service connection for generalized anxiety disorder or major depression." Appx1040-1042.

12

concurring) (explaining "an assertion that an issue was *not* adjudicated is distinct from an assertion that an issue was *wrongly* adjudicated")

The Veterans Court issued a decision on Mr. Bean's Petition on April 27, 2020.  Appx1075-1078.  Although the Veterans Court did not grant the petition, the Veterans Court did not dismiss the Petition as moot either.  *Id.*  Rather, the Veterans Court found "the May 2019 Board decision acknowledged his contention that his 1997 claim had been for an acquired psychiatric disorder, not just PTSD, and that claims for depression and anxiety remained pending," and thus Mr. Bean had an "adequate alternative means to attain the relief he desired."  *Id.*

### 2. The Veterans Court's April 28, 2020, Single-Judge Memorandum Decision and the Secretary's Motion for Reconsideration.

On April 28, 2021, the Veterans Court issued a single-judge decision. Appx0984-0993.  The Veterans Court "agree[d] with the appellant that he [had] continually asked VA to determine whether he has an outstanding claim for generalized anxiety disorder and major depression, and VA has done little to address that argument."  *Id.*  The Veterans Court then remanded "the issue of whether the appellant has outstanding unadjudicated claims seeking service connection for acquired psychiatric disorder other than PTSD, to include generalized anxiety disorder and major depressive disorder that have remained pending since 1997."  *Id.*

Around this time, Mr. Bean informed counsel that he had been diagnosed with terminal cancer. *See* Appx1080-1083. Counsel contacted the Secretary to seek waiver of the 60-day appeal period, so that Mr. Bean's then 24-year pending claim could be considered before he passes away. *See id.* The Secretary would not agree to waive the period and instead filed a Motion for Reconsideration or, in the alternative, a Panel Decision, urging the Court to reconsider whether it had jurisdiction to address Mr. Bean's arguments.

Per the Veterans Court's request, Mr. Bean responded to the Secretary's motion on August 24, 2021, arguing that the Secretary had simply regurgitated his prior arguments and had not addressed any of the *Frankel* factors.[8]

### 3. The Veterans Court's December 30, 2021, Single-Judge Memorandum Decision.

Over four months after Mr. Bean submitted his response, the Veterans Court withdrew the April 28, 2021, memorandum decision, re-issued another single-judge decision, and dismissed Mr. Bean's appeal of the Board's May 10, 2019, decision. Appx001-009. The Veterans Court found that Mr. Bean had "neither assert[ed] error in the Board's decision nor provide[d] any reasons why he believe[d] the Board's decision was wrong." Appx007. The Veterans Court

---

[8] The Veterans Court's Rule 35 sets a high bar for a litigant to obtain either a rehearing or a panel decision after a single-judge decision. U.S. VET.APP. R. 35. Moreover, if a litigant seeks a panel decision, the litigant must explain why a precedent is required under *Frankel* and according to the criteria set out in Rule 35(e)(2). *Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

continued that Mr. Bean's argument that the Board "erred when it failed to address" the unadjudicated, pending claims was "not related or pertinent to the issue of entitlement to an earlier effective date for the grant of service connection for [PTSD] – which was before the Board in the decision now on appeal." *Id.* Therefore, the Veterans Court concluded, it did "not possess jurisdiction over the issue raised by the appellant in his brief" and dismissed the appeal. *Id.*

## SUMMARY OF ARGUMENT

The Veterans Court's decision not only allows the VA to pick and choose whether it will address issues specifically raised, but it violates the common law doctrine of collateral estoppel, ignores its own authority to consider constitutional issues, perpetuates the violation of Mr. Bean's Constitutional rights, and keeps Mr. Bean on the never-ending "hamster wheel" that the VA system has become.

VA has a clear, statutory obligation to adjudicate claims reasonably raised by the record and to award every benefit to which a veteran may be entitled. In 1997, Mr. Bean sought service connection for a mental disorder. His service medical records showed a diagnosis of anxiety reaction disorder and VA's own doctors confirmed a diagnosis of generalized anxiety and major depressive disorder in a 1997 C&P examination. Nonetheless, the RO did not address the clearly raised claims, much less implicitly deny service connection for generalized anxiety and major depressive disorder.

15

Mr. Bean has brought this exact issue up over and over again *since 2007*. He has clearly – and correctly – argued that his initial claim in 1997 was not limited to a claim for service connection for PTSD, but included claims for service connection for generalized anxiety and major depressive disorder. Yet, the RO, the Board, and now the Veterans Court have essentially done nothing, not only failing to comply with the law and regulations, but also depriving Mr. Bean of his Constitutional Due Process rights.

The evidence of record is clear: Mr. Bean's generalized anxiety and major depressive disorder are service-connected, and in light of the VA's failure to adjudicate this claim *for almost 25 years*, the Federal Circuit should reverse the Veterans Court's decision and order that Mr. Bean be award his service-connected benefits.

## ARGUMENT

## I. STANDARD OF REVIEW

The court reviews *de novo* whether the Veterans Court had jurisdiction to address whether Mr. Bean had unadjudicated, pending claims. *See Howard v. Gober*, 220 F.3d 1341, 1343 (Fed. Cir. 2000) (explaining whether the Veterans Court has jurisdiction "is an issue of statutory construction").

The court reviews *de novo* whether collateral estoppel is available. *See SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341, 1345 (Fed. Cir. 2021).

Courts review whether Fifth Amendment Procedural Due Process rights have been violated under the *de novo* standard. *See William Jefferson & Co., Inc. v. Bd. of Assessment & Appeals No. 3*, 695 F.3d 960, 963 (9th Cir. 2012); *Amouri v. Holder*, 572 F.3d 29 (1st Cir. 2009); *Fadiga v. Atty Gen. of the U.S.*, 488 F.3d 142, 153 (3d Cir. 2007); *Chakir v. Gonzales*, 466 F.3d 563 (7th Cir. 2006); *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074 (10th Cir. 2006); *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004); *Flores v. Ashcroft*, 354 F.3d 727, 729 (8th Cir. 2003); *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003); *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002); *Johnson v. Hugo's Skateway*, 949 F.2d 1338 (4th Cir. 1991); *see also generally Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009).

## II. THE VETERANS COURT'S DECISION IGNORES THE APPLICABLE STATUTES.

In just under two pages of analysis, and without citation to any authority for how it reached its decision "that the matter raised by the appellant exceeds the Court's jurisdiction," the Veterans Court's dismissed Mr. Bean's appeal of the Board's failure to address his claims for service connection for generalized anxiety and major depressive disorder. Appx007-009. In doing so, the Veterans Court ignored 38 U.S.C. § 7261(a)(3)(b), 38 U.S.C. § 7104, and 38 U.S.C. § 7105, requiring reversal by this court.

**A.** <u>**The Veterans Court Had Jurisdiction to Address the Constitutional Issue Raised.**</u>

The Supreme Court has explained that "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, *access to the courts is essential to the decision of such questions*." *Califano v. Sanders*, 430 U.S. 99, 109 (1977) (emphasis added). The Supreme Court continued it is a "well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence." *Id.* (quoting *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975)).

Here, not only is there no "clear and convincing" evidence that Congress wanted to preclude the Veterans Court from addressing constitutional question, but the opposite is true. Section 7261(a)(3)(B) specifically provides the Veterans Court with the authority to "hold unlawful and set aside decisions . . . by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board found to be – *contrary to constitutional right*, power, privilege, or immunity." 38 U.S.C.A. § 7261(a)(3)(B) (West 2014) (emphasis added).

Therefore, when Mr. Bean raised the issue in Appellant's Brief that the Board's decision violated his Constitutional Due Process rights, *see* Appx0918-0922, the Veterans Court acquired jurisdiction, and the Veterans Court erred in not

addressing the constitutional question.  *See Califano*, 430 U.S. at 109; *see also*

*Bowen v. Mich. Academy of Family Physicians*, 476 U.S. 667, 680-82 (1986);

*Juliana v. United States*, 947 F.3d 1159, 1167-68 (9th Cir. 2020) (explaining there

is independent jurisdiction to raise constitutional claims).

Therefore, the Veterans Court's holding that it lacked jurisdiction to hear

Mr. Bean's appeal should be reversed, as it fails to comply with the plain language

of the governing statutes.  38 U.S.C.A. § 7292(e)(1) (West 2014); *see* 38 U.S.C.A.

§ 7261(a)(3)(B).

**B. <u>VA's Own Statutes Provided the Veterans Court with Jurisdiction Over the Issue Raised by Mr. Bean on Appeal.</u>**

In the decision now on appeal, the Veterans Court expressed that Mr. Bean's

arguments regarding unadjudicated, pending claims were "not related or pertinent

to the issue of entitlement to an earlier effective date for the grant of service

connection for [PTSD] – which was before the Board in the decision now on

appeal."  Appx007.  This turnaround from the original decision demonstrates a

misunderstanding of the plain language of the governing statutes.

In 2013, 38 U.S.C. § 7105 stated "[a]ppellate review [would] be initiated by

a notice of disagreement and completed by a substantive appeal after a statement of

the case is furnished as prescribed in this section."  38 U.S.C.A. § 7105(a) (West

2002).  Once an NOD is properly filed, the agency of original jurisdiction would

19

take such development or review action as it deems proper under the provisions of regulations not inconsistent with this title. If such action does not resolve the disagreement either by granting the benefit sought or through withdrawal of the notice of disagreement, such agency shall prepare a statement of the case. A statement of the case shall include the following: (A) A summary of the evidence in the case pertinent *to the issue or issues with which disagreement has been expressed*.

38 U.S.C.A. § 7105(d)(1) (emphasis added). The Board's decision is then supposed to be "based *on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation*." 38 U.S.C.A. § 7104(a) (West 2014) (emphasis added).

Thus, the plain language of these provisions makes clear that the "issue" before the 2019 Board was not, in fact, whether Mr. Bean was entitled to an earlier effective date for service connection for PTSD, but rather the "issue or issues with which disagreement has been expressed": whether Mr. Bean had unadjudicated, pending claims for service connection for major depressive disorder and generalized anxiety. Appx0238; 38 U.S.C.A. § 7105(d); *see Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000) (explaining a " 'decision' of the Board, for purposes of the Veterans Court's jurisdiction under section 7252, is the decision *with respect to the benefit sought by the veteran*"). The Board had jurisdiction to address this issue, based on the plain language of 38 U.S.C. § 7104(a), and the Veterans Court had jurisdiction to review whether the Board's dismissal – which is

a final action, *see Smith v. Berryhill*, 139 S. Ct. 1765, 1780 (2019); *Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344, 1348 (Fed. Cir. 2002) – was proper in light of the plain language of both 38 U.S.C. §§ 7104(a) and 7105.  38 U.S.C.A. § 7252(a) (West 2014); *see Maggitt*, 202 F.3d at 1376 (explaining the Veterans Court's jurisdiction is tied to a final Board decision, not a particular issue).

The Veterans Court's holding otherwise should therefore be reversed, as it fails to comply with the plain language of the governing statutes.  38 U.S.C.A. § 7292(e)(1).

## III. THE VETERANS COURT'S SINGLE-JUDGE DECISION IGNORES DECADES WORTH OF ITS OWN PRECEDENT WITH NO EXPLANATION FOR WHY OR HOW IT HAS THE AUTHORITY TO DO SO.

The Supreme Court has reiterated time and time again that *stare decisis* is "a foundation stone of the rule of law" and any departure from it must be for an exceptional reason.  *Michigan v. Bay Mills Indian Cmty*, 572 U.S. 782, 798 (2014); *see*, *e.g.*, *Kisor v. Wilkie*, 139 S. Ct. 2400, 2422-23 (2019) (explaining *stare decisis* requires special justification to overturn precedent, especially when it involves a "long line of precedents"); *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 455-56 (2015) (holding that *stare decisis* requires "special justification" to overturn precedent, especially in a statutory interpretation case).  This fundamental rule not only runs vertically through our judicial system, where a circuit court must abide by the decision of the Supreme Court, and a lower court must abide by the

decision of a circuit court and the Supreme Court, *see Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 n.5 (2020), but horizontally as well. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed. Cir. 1989) (noting a panel either needs to discuss prior conflicting statements of the law and explain how the statements can be reconciled, follow the earlier statement, or seek *en banc* consideration if the panel believes that the later statement is correct); *Wolfe v. Wilkie*, 32 Vet.App. 1, 37-38 (2019) (holding it "can't and won't" ignore a prior decision of the Veterans Court); *Frankel*, 1 Vet.App. at 25-26.

Therefore, a single judge of the Veterans Court is not only bound by the decisions of the Supreme Court and the Federal Circuit, but also by both the panel and en banc decisions of the Veterans Court. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (citing *Tobler v. Derwinski*, 2 Vet.App. 8 (1991)) (explaining a single judge may not render a decision which conflicts materially with an earlier panel or en banc opinion). Moreover, there is no authority for a single judge to overturn a panel decision or an en banc decision, as a single judge decision can only decide an appeal if it is "of relative simplicity *and* [ ] does not establish a new rule of law; [ ] does not alter, modify, criticize, or clarify an existing rule of law; [and] does not apply and established rule of law to a novel fact situation." *Frankel*, 1 Vet.App. at 25-26.

Yet despite this "foundation stone of the rule of law," the Veterans Court decision fails to abide by binding precedent or explain under what authority it can issue a single-judge decision which establishes a new rule of law. *Cf. Wolfe*, 32 Vet.App. at 37-38; *Bethea*, 2 Vet.App. at 254; *Frankel*, 1 Vet.App. at 25-26.

## A. **The Veterans Court Ignored a Directly Applicable Panel Decision.**

The Veterans Court's single-judge decision fails to mention or explain why the Veterans Court's panel decision in *Cogburn v. Shinseki*, 24 Vet.App. 205 (2010), the facts of which are remarkably similar to the facts here, should not be followed. *Cf.* Appx0911-0917. This requires reversal. *See Bay Mills Indian Cmty*, 572 U.S. at 798.

### 1. **By a Panel Decision, the Veterans Court Has Held It Has Jurisdiction to Address Situations Where Appellants Assert the Board Failed to Address Their Claims of Unadjudicated, Pending Claims.**

In *Cogburn*, the veteran argued that he was not seeking an earlier effective date for his service-connected PTSD or alleging a clear and unmistakable error in a prior decision, but rather that his claim for a "nervous disorder" remained pending. *Cogburn v. Shinseki*, 24 Vet.App. 205, 208-209 (2010). The Secretary argued "if Mr. Cogburn believed that he had a claim left pending, he should have appealed the 1975 regional office decision." *Id.* at 209.

The Veterans Court disagreed with the Secretary. *Id.* at 214. It explained that the Board had acknowledged that Mr. Cogburn had raised the issue of an

unadjudicated, pending claim, but "rather than address this argument," the Board

held that the prior Board decision denying service connection for PTSD had

become final. *Id.* at 214. The Veterans Court explained that this "reflect[ed] a

misunderstanding of Mr. Cogburn's arguments below" and that Mr. Cogburn had

not argued

> that he had a pending disability compensation claim for post-traumatic stress disorder. **Instead, he asserted that his 1974 claim for a 'severe nervous condition' and a 1975 informal claim were never addressed by the regional office and he requested that his claims be adjudicated as soon as possible**. R. at 551-54. The regional office rejected that argument in its October 2002 rating decision

and Mr. Cogburn initiated an appeal by filing an NOD and a Substantive Appeal.

*Id.* (emphasis added)

The Veterans Court continued that that the

> January 2008 Board decision, however, failed to review the October 2002 regional office determination that his 1974 claim was finally adjudicated. *See Jarrell v. Nicholson*, 20 Vet.App. 326, 331 (2006) . . . The Court therefore finds that it **was error for the Board not to address Mr. Cogburn's disagreement with the regional office's refusal to adjudicate what Mr. Cogburn argued were pending claims**.

*Cogburn*, 24 Vet.App. at. 214-15 (emphasis added).

As *Cogburn* is directly on point, the Veterans Court erred in not applying the

holding from the decision, requiring reversal. *See Bay Mills Indian Cmty*, 572 U.S.

at 798.

### 2. Mr. Bean Has Unadjudicated, Pending Claims.

Just like Mr. Cogburn, there is no question that Mr. Bean has unadjudicated, pending claims. *Compare Cogburn*, 24 Vet.App. at 206-14 *with* Appx0049, Appx0238, Appx0251-0252, Appx0310, Appx0319-0339, Appx0455-0457, Appx0487-0488, Appx0512-0515, Appx0658, Appx0741-0743.

Mr. Bean's service medical records showed a diagnosis of anxiety reaction disorder and a 1997 C&P examiner diagnosed him with major depressive disorder and anxiety. Appx0083, Appx0084, Appx0745-0748; *see Bell v. Derwinski*, 2 Vet.App. 611, 613 (1992) (explaining evidence generated by the VA provides the Secretary with constructive, if not actual, knowledge of the evidence). The July 11, 1997, rating decision noted that Mr. Bean had a current diagnosis of anxiety and depression, but only in relation to Mr. Bean's lack of diagnosis of PTSD. Appx0741-0743. The RO did not address whether Mr. Bean could be service connected for generalized anxiety or major depressive disorder, or the fact that Mr. Bean had been diagnosed with anxiety reaction disorder when he was in service. And since no entity within the VA has adjudicated these claims, they have "remain[ed] in an unadjudicated state."[9] *DiCarlo v. Nicholson*, 20 Vet.App. 52,

---

[9] The April 2020 decision does not alter this analysis. First, the rating decision must be read within the proper context of what it was addressing. The decision begins by acknowledging that a "special review of [Mr. Bean's] file was mandated *on May 10, 2019*." Appx1040-1042. Thus, the RO was responding to the *May 2019 Board decision*, which had construed Mr. Bean's submissions to be seeking

56-57 (2006); *see Clemons v. Shinseki*, 23 Vet.App. 1, 4-6, 9 (2009); *see also*

*Adams v. Shinseki*, 568 F.3d 956, 963 (Fed. Cir. 2009); *see also*, *e.g.*, *Jones v.*

*Shinseki*, 23 Vet.App. 122, 125 (2009) (discussing whether a veteran's prior claim

for service connection for "nerves" was implicitly denied by a later Board decision

that denied entitlement to service connection for a nervous condition, to include

PTSD); *Ingram v. Nicholson*, 21 Vet.App. 232, 247 (2007) (explaining that an

issue remains pending until a rating decision addresses the issue directly or until a

claimant could reasonably deduce that the claim had been denied).

Also, at no point in this process would Mr. Bean – who was not represented

by an attorney prior to his appeal to the Veterans Court – have even an inkling that

the VA had ever denied his claim for service connection for major depressive

disorder and generalized anxiety, such that one could assume these claims had

been implicitly denied. *Cf. Adams*, 568 F.3d at 963 (explaining that the veteran

could have reasonably concluded his claim for bacterial endocarditis had been

implicitly denied, when the RO noted it had considered an affidavit that had

---

an earlier effective date for his service-connected *post-traumatic stress disorder* and implied in its decision how Mr. Bean could go about obtaining *that benefit*, not how Mr. Bean could obtain service connection for generalized anxiety and depression. *See* Appx0310. Second, the April 2020 decision should be confined to the question it professed to be answering ("whether rating decision approved July 11, 1997 contained a clear and unmistakable error by not applying 38 C.F.R. [3.160(c)]," rating decision, at 2) *and* the actual decision reached ("Rating decision approved July 11, 1997 does not contain a clear and unmistakable error." Appx1040-1042.

referred to both rheumatic heart disease and subacute bacterial endocarditis, and then denied service connection for the rheumatic heart disease); *Deshotel v. Nicholson*, 457 F.3d 1258, 1259-60 (Fed. Cir. 2006) (noting the RO had stated that the VA examination shows no psychiatric symptomatology, and this was sufficient to put the veteran on notice that the RO had implicitly denied his claim). Thus, they remain pending to this day. *See Cogburn*, 24 Vet.App. at 212-13 (explaining the four factors to be considered when determining whether there is an unadjudicated, pending claim).

The similarities between Mr. Bean's case and Mr. Cogburn's case are uncanny, such that it would not have been surprising if the Veterans Court had issued a single-judge decision simply citing to *Cogburn*.[10] *See Frankel*, 1 Vet.App. at 25-26. But in a strange twist, the Veterans Court did not even mention *Cogburn*, let alone provide any sort of " 'special justification' " for why it should not be followed. *Cf. Bay Mills Indian Cmty.*, 572 U.S. at 798 (quoting *Ariz. v. Rumsey*, 467 U.S. 203, 212 (1984)). This requires reversal by the Federal Circuit. *Cf. id.*

---

[10] Mr. Bean cited to *Cogburn* in Appellant's Brief, Appx0912, and discussed at length the similarities between the two cases in his Reply Brief. Appx0970-0974.

**B. In *Travelstead* and Its Progeny, the Veterans Court Specifically Held that It Had Jurisdiction to Address Whether the Board Ignored a Reasonably Raised Issue that Was Before the Secretary and the Veterans Court Offered No Explanation for Why This Precedent Should Not Be Followed.**

In one of its first decisions in 1991, the Veterans Court addressed whether it had jurisdiction over an issue that "the BVA did not consider," was unrelated to the specific question that the Board did consider, and the VA Form 9 did not specifically address. *Travelstead v. Derwinski*, 1 Vet.App. 344, 346 (1991), *aff'd*, 978 F.3d 1244 (Fed. Cir. 1992). The Veterans Court held that its jurisdiction provided for such review, as its "role in the appellate review process" requires that its review "shall be on the record of proceedings before the Administrator [now, Secretary] and the Board" and that the issue in question had originally been before the VA, even though the VA had not acted on it.[11] *Id.*

The Veterans Court also explained it had "the authority to look at the record before the BVA and necessarily to decide whether something should have been before the BVA" and that "[w]hen the BVA makes a decision (implicitly or explicitly) not to deal with an issue considered at the VARO level, then that decision *not* to decide an issue *is* a decision by the BVA which is properly before

---

[11] There is no legitimate argument that Mr. Bean's claims for service connection for generalized anxiety and major depressive disorder were not "before the Secretary." *See Travelstead v. Derwinski*, 1 Vet.App. 344, 346 (1991), *aff'd*, 978 F.3d 1244 (Fed. Cir. 1992); *see also Buckley v. West*, 12 Vet.App. 76, 81 (1998) (quoting *Suttman v. Brown*, 5 Vet.App. 127, 132 (1993)) (emphasis added).

this Court." *Id.* (emphasis added). Finally, the Veterans Court noted that its review of whether a provision should have been applied "falls into the category of permissible actions" under the Court's " 'scope of review' statute." *Id.*

This exact same scenario was addressed a year later in *Elkins* and the Veterans Court came to the same conclusion as it had in *Travelstead*: the issue of entitlement "was before the 'Secretary,' " by virtue of the RO's consideration of a release from liability, "and [the] Court [had] jurisdiction to review the matter even though "the issue of appellant's entitlement to a release from liability was not before the BVA." *Elkins v. Derwinski*, 2 Vet.App. 422, 426 (1992).

The question of whether the Veterans Court had jurisdiction to consider issues ignored by the Board was addressed again in *Cromley v. Brown*, 7 Vet.App. 376 (1995). There, the veteran appealed the effective date for his service-connected tinnitus. *Cromley*, 7 Vet.App. at 377. A year later, in a statement relating to his appeal, the veteran raised the issue that he had "an emotional problem due to his hearing loss." *Id.* Several years later, during a Board hearing, the veteran explained that he had "difficulty in maintaining a job due to his hearing problems." *Id.* Despite claiming a clear connection between a nervous condition and his service-connected tinnitus, the Board did not address the issue. *Id.* at 378-79. The Veterans court held the Board's failure to address the issue of service connection for a nervous condition " 'reasonably raised from a liberal reading of

the appellant's substantive appeal' " required remand as "the BVA [could not] ignore [a claim] by neglecting to address or acknowledge it." *Id.* at 379 (quoting *Myers v. Derwinski*, 1 Vet.App. 127, 130 (1991) and citing *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990)).

The Veterans Court addressed the question yet again in *Owens v. Brown*, 7 Vet.App. 429 (1995). There, the RO denied service connection for temporomandibular joint (TMJ) disorder. *Owens*, 7 Vet.App. at 431. In the NOD and the VA Form 9, the veteran explained that "his teeth were extracted during service," which led to the TMJ disorder. *Id.* The Board continued the denial of service connection for TMJ disorder and did not address whether the veteran was entitled to service connection for tooth extractions. *Id.* at 432.

On appeal, the Veterans Court affirmed the Board's denial of service connection for TMJ disorder but held that the Board "erred in failing to address the appellant's claim for tooth extractions." *Id.* at 433. The Veterans Court continued that "[w]hen the *appellant* reasonably raises a claim for a particular benefit, the Board is required to adjudicate the issue of the claimant's entitlement to such a benefit, or if appropriate, to remand the issue to the RO for development and adjudication of the issue." *Id.* (citing *Suttmann v. Brown*, 5 Vet.App. 127, 132 (1993)) (emphasis added). Therefore, the Veterans Court remanded the issue. *Id.* at 434.

Looking at the issue for the purpose of attorney's fees, the Veterans Court explained that it had "held that the issue [of TDIU] had been reasonably raised [and] found that the BVA's *failure* to address the TDIU issue was in error." *Matter of Smith*, 10 Vet.App. 311, 314 (1997) (emphasis in original). The Veterans Court continued that "[w]here the BVA fails to adjudicate a claim that was reasonably raised before it, the net outcome for the veteran amounts to a denial of the benefit sought" and "constitutes a final adverse BVA decision with respect to that claim." *Id.*

These cases make clear the Veterans Court's historical view on whether it has jurisdiction to consider issues that were not directly addressed by the Board, so long as the issue was "before the Secretary" and raised by either the appellant or the record: the Veterans Court has jurisdiction pursuant to its statutory scope of review. Nonetheless, in this case, the Veterans Court offered no reason for its departure from this long-standing principle or on what authority a single judge could do so. *See Kisor*, 139 S. Ct. 2422-23; *Kimble*, 576 U.S. at 455-56; *Bethea* , 2 Vet.App. at 254; *see also Johnston*, 885 F.2d at 1579 (noting a panel either needs to discuss prior conflicting statements of the law and explain how the statements can be reconciled, follow the earlier statement, or seek *en banc* consideration if the panel believes that the later statement is correct); *Wolfe*, 32 Vet.App. at 37-38; *Frankel*, 1 Vet.App. at 25-26. This alone requires reversal of the Veterans Court's

decision, and the court should so hold.  *See*, *e.g.*, *Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (vacating Veterans Court's decision when holding was in direct conflict of precedent); *Bethea*, 2 Vet.App. 252, 254 (1992).

## IV.  THE VETERAN COURT'S DECISION ALLOWS THE VA TO PICK AND CHOOSE WHAT TO ADDRESS, INSTEAD OF VA HAVING THE RESPONSIBILITY TO REVIEW THE ENTIRE CLAIMS FILE.

As discussed above, appellate review begins with the filing of an NOD.  38 U.S.C.A. § 7105.  This document provides the contours for the Board's decision, namely with what "specific determination" does the *veteran* take issue?  *Maggitt*, 202 F.3d at 1376; *Ledford v. West*, 136 F.3d 776, 779-80 (Fed. Cir. 1998). Nonetheless, the Veterans Court tied its jurisdiction only to the issue that was specifically *addressed by the Board*, as opposed to the "specific determination" that was appealed.  Appx007-008.  This characterization of its jurisdiction defies the plain language of relevant statutes, *see infra* Arg. II, and permits the Secretary to ignore clearly raised issues.  *Cf.* 38 C.F.R. § 3.103(a) (2021).

Not only is this the antithesis of the pro-veteran system, *see Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006) (explaining Congress created the Veterans Court to ensure "veterans were treated fairly by the government and to see that all veterans entitled to benefits received them"), but it creates a Catch-22[12]

---

[12] *Merriam-Webster* defines a "Catch-22" as "a problematic situation for which the only solution is denied by a circumstance inherent in the problem or by a rule." Catch-22, MERRIAM-WEBSTER DICT., *available online at https://www.merriam-*

where there is no way for Mr. Bean to ever get off the VA's "hamster wheel" with respect to these specific claims. *See Cogburn v. Nicholson*, 19 Vet.App. 427, 434 (2006) (Lance, J., dissenting) (discussing the "hamster wheel" reputation of veterans law).

In *DiCarlo*, the Court

> noted that a claim may remain in an unadjudicated state due to the failure of the Secretary to process it. In such instances, the appropriate procedure for a claimant to press a claim believed to be unadjudicated (and for which there is no final decision that arguably failed to consider the claim) *is to pursue a resolution of the original claim, e.g., seek issuance of a final RO decision with proper notification of appellate rights and initiate an NOD*. *See* 38 U.S.C. §§ 5104, 7105.

*DiCarlo*, 20 Vet.App. at 56 (emphasis added).

Mr. Bean did just that. He "pursue[d] a resolution of the original claim" by specifically raising the issue in his Supplemental Statement in Support of Claim. Appx0487-0488. The RO issued a Statement of the Case shortly thereafter, Appx0461-0483, and Mr. Bean responded by once again arguing that he had unadjudicated, pending claims. Appx0455-0457. The May 2012 Board acknowledged this, but did not render any sort of decision on the issue (such as remanding with instructions that the claims were in fact pending, that they had not been decided by the July 1997 rating decision, and that they need to be

---

*webster.com/dictionary/catch-22* (last visited March 9, 2022). The term comes from Joseph Heller's novel *Catch-22*. *Id.*

adjudicated, *see Owens*, 7 Vet.App. at 433-34). Appx0319-0339. Instead, the Board advised Mr. Bean to file a Motion for Revision. *Id.*

Mr. Bean did so on July 26, 2012, and reiterated that, as he had

> previously testified to the VA (please see my Notice of Disagreement (NOD) and Statement in Support of Cliam [(sic)] to supplement my NOD and my Substantive Appeal it is my contention that my original claim for service connection for PTSD constituted a claim for an acquired psychiatric disability to include generalized anxiety disorder, major depression and/or PTSD. . . . *As I have previously stated I believe the VA's failure to [to adjudicate these claims] constitutes an unadjudicated claim in accordance with* 38 C.F.R. 3.160(c).

Appx0310 (emphasis added).

The RO adjudicated this statement as a new, free-standing claim for an earlier effective date for Mr. Bean's service-connected PTSD and denied an earlier effective date on September 10, 2013. Appx0245-0250. Again, the RO did not acknowledge Mr. Bean's claim that there were unadjudicated, pending claims for service connection for anxiety and major depressive disorder. *Id.*

Mr. Bean did not give up on having the unadjudicated, pending claims considered though, and on September 30, 2013, Mr. Bean submitted an NOD to the September 2013 rating decision that specifically referred to the arguments he had made back in July 26, 2012, which reiterated that he had unadjudicated, pending claims. Appx0237-0238; *see* Appx0310.

All of this is to say that Mr. Bean has done exactly what the Veterans Court previously instructed veterans to do in *DiCarlo*, while trying to follow the current instructions of the Secretary as well.  He has tried time and time again to seek a decision and the Secretary has ignored his pleas.  *Cf.* 38 C.F.R. § 3.103(a).

Allowing the Veterans Court's decision to stand allows the Secretary to define not only the Veterans Court's jurisdiction, but this court's jurisdiction as well, by intentionally keeping issues from judicial review.  *Cf. Monk v. Shinseki*, 855 F.3d 1312, 1320 (Fed. Cir. 2017) (explaining "Congress expressly gave the Veterans Court the authority to 'compel action of the Secretary unlawfully withheld or unreasonably delayed.' 38 U.S.C. § 7261(a)(2)"); *see Slaughter v. McDonough*, -- F.4d --, slip op. at 7 (Fed. Cir. March 30, 2022).  This is contrary to Congress' intent to allow for judicial review of Board decisions, and the court should reverse the Veterans Court's decision.  *See Barrett*, 466 F.3d at 1044; 38 C.F.R. § 3.103(a).

## V. COLLATERAL ESTOPPEL PREVENTED THE VETERANS COURT FROM RELITIGATING THE ISSUE OF JURISDICTION BECAUSE ITS DECISION ON THE WRIT SET PARAMETERS THAT BOUND THE COURT IN THE DECISION ON THE MERITS.

Relying on *Restatement (Second) of Judgments*, the Supreme Court has explained "the general rule" for issue preclusion to apply is

- the issue of fact or law needs to actually be litigated,

- the issue of fact or law needs to be determined by a valid and final judgment, and

- the issue of fact or law needs to be is essential to the judgment.

*B&B Hardware, Inc. v. Hagris Industries, Inc.*, 575 U.S. 138, 148 (2015) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27, p. 250 (1980)). If these three factors are present, then "the determination is conclusive in a subsequent action between the parties, *whether on the same or a different claim.*" *Id.* (emphasis added).

All three factors are present here.

Addressing whether a writ was appropriate, the Veterans Court held that Mr. Bean had "not demonstrated that he lacks alternative means to attain the relief he desires": a decision on his 1997 pending, unadjudicated claims. Appx1077. The Veterans Court continued that "the May 2019 Board decision acknowledged his contention that his 1997 claim had been for an acquired psychiatric disorder, not just PTSD, and that the claims for depression and anxiety remained pending," and thus, "it [would] appear that [Mr. Bean] has alternative means to correct any errors in the May 2019 Board decision." *Id.*

Implicit in this decision is the determination that the Veterans Court would have jurisdiction to hear Mr. Bean's appeal of the May 2019 Board decision. *Cf. id.* This determination meets the first factor. *See N. Ga. Elec. Membership Corp. v. City of Calhoun, Ga.*, 989 F.2d 429, 432-33 (11th Cir. 1993) (explaining the

issue of jurisdiction was litigated and therefore can be collaterally estopped from being raised again in a different claim) (referencing *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980), *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987), and RESTATEMENT (SECOND) OF JUDGMENTS § 20, cmt. b illus. 1 (1982)).  The Veterans Court's decision on the petition was a "valid and final judgment," meeting the second factor.  *See* 28 U.S.C.A. § 1651(a) (West 2014).  Finally, the issue of jurisdiction was "essential to the judgment" that a writ could not be granted, otherwise Mr. Bean would not have had "alternative means to attain the relief he desires."  Appx1077.

Therefore, the court should hold the common law doctrine of collateral estoppel, or issue preclusion, prevented the Veterans Court from re-litigating the issue of jurisdiction and requires this court to hold that the Veterans Court had jurisdiction.  *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-30 (1979) (explaining the use of offensive collateral estoppel, where a plaintiff seeks to prevent a defendant from re-litigating an issue previously litigated and lost in another matter); *see also MaxLinear*, *Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018); Charles Alan Wright & Arthur R. Miller, 18B FEDERAL PRAC. & PROC. § 4475 (2d ed. April 2021 Update).

## VI. THE SECRETARY'S FAILURE TO ADJUDICATE MR. BEAN'S CLAIMS FOR ALMOST 25 YEARS VIOLATES HIS CONSTITUTIONAL DUE PROCESS RIGHTS.

The Federal Circuit has held that "veteran's disability benefits are nondiscretionary, statutorily mandated benefits" and thus, "entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution." *Cushman*, 576 F.3d at 1298; *see* U.S. CONST. amend V. With such protection guaranteed, veterans must be afforded "the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Edwards v. Shinseki*, 582 F.3d 1351, 1355 (Fed. Cir. 2009) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332-36 (1976) (internal quotations omitted)); *see Schroeder v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991) (explaining it is not only a timely decision that is owed to an applicant, but entitlement to receive the benefit itself within a reasonable time). To determine whether a meaningful opportunity has been provided to meet this high standard, there must be "consideration of three distinct factors:"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

At issue here is whether the almost 25-year delay in determining whether Mr. Bean was entitled to service connection for generalized anxiety and major depressive disorder meets the due process requirements of a hearing and decision at a "meaningful time."[13]  *Id.*  Mr. Bean argues that the answer is a resounding "no" – an almost 25-year delay in rendering a decision cannot comport with Constitutional Due Process requirements, especially when Mr. Bean has consistently raised the issue and was given incorrect advice by the Board.  *See* Appx0048-0049, Appx0237, Appx0310, Appx0319-0339, Appx0487-0488, Appx0654-0657.

Specifically addressing the *Mathews* factors, the "private interest that will be affected by the official action" is Mr. Bean's VA disability compensation benefits for the period of 1997 forward.  *See Cushman*, 576 F.3d at 1298.  For Mr. Bean, this equated to a serious harm, as it had the ultimate effect of denying him *any* benefits for the period of 1997 through 2006, and additional benefits for the period of 2006 forward.[14]  *See FDIC v. Mallen*, 486 U.S. 230, 243 (1988) (acknowledging

---

[13] Mr. Bean does not contest VA's hearing procedures, i.e. his ability to submit information, the lack of formal evidence rules, etc.

[14] The amount at issue here is not negligible.  *See Isaacs v. Bowen*, 865 F.2d 468, 476 (2d Cir. 1989) (discussing whether $500 was sufficient to raise due process concerns).  Depending on what rating Mr. Bean would receive, his retroactive award would be anywhere from over $11,000 (if he was awarded a 10% rating) *to over* $110,000 (if his current 70% rating was awarded back to 1997) for the period of 1997-2006 (at which point he began to receive 70% for his service-connected

the "severity of depriving someone of his or her livelihood"), *NLRB v. J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 265-66 (1969) (explaining it is "deplorable" when administrative delay results in employees having to live for years on reduced incomes).

With regard to the second *Mathews* factor, "deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," such as requiring a decision when an issue is raised, is self-evident, especially within the VA adjudication system. *See*, *e.g.*, *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) (acknowledging that while procedural requisites vary, depending upon the nature of the proceedings, the "length of wrongful deprivation of unemployment benefits is an important factor"). Timely decisions allow a veteran, who is suffering from a disability as a result of his service to this country, the ability to not only receive compensation and utilize this money for care, but also to receive timely medical care from the VA. *See* VA priority groups, Eligibility, Health Care, DEP'T OF VETERANS AFFAIRS, *available at https://www.va.gov/health-care/eligibility/priority-groups/* (last visited March 9,

---

PTSD).  Moreover, as of 2006, it would be possible for Mr. Bean's combined rating to increase to 80% or even 90%, which would then entitle him to the difference between 70% and 80% or 90% for the period of 2006 through 2010, at which point he was awarded TDIU.  *See Murray v. Shinseki*, 24 Vet.App. 420, 423 (2011) (reiterating that separate disability ratings are warranted if the symptoms of the conditions are "distinct and separate").  This would amount to an additional $10-$20,000, in retroactive benefits.

2022) (explaining one factor for determining a veteran's priority group is the veteran's disability rating).

Addressing the "Government's interest," Mr. Bean acknowledges that the Secretary has an interest in not creating an exact time frame for the RO or the Board to render a decision and is not asking the court to do so. *See City of Los Angeles v. David*, 538 U.S. 715, 718-19 (2003) (explaining resources and volume impact whether delay is understandable). Mr. Bean also acknowledges the complexity of a case and the number of claims within any case can understandably make adjudication times vary, *see Martin v. O'Rourke*, 891 F.3d 1338, 1345-46 (Fed. Cir. 2018) (acknowledging that complex and substantive agency action takes longer than "purely ministerial" action), but the issues here are not complex nor numerous. Mr. Bean has raised a straightforward claim for service connection, where the record contains an in-service diagnosis, a current diagnosis, and nexus evidence provided by a VA psychiatrist and a VA C&P examiner and the Secretary has offered *no rationale* – let alone a reasonable one – for why he has not issued a decision in *almost 25 years*. *See Kelly v. RR Retirement Bd.*, 625 F.2d 486, 490 (3d Cir. 1980) (holding that "three years, nine months, is well past any reasonable time limit, when no valid reason for the delay is given").

Finally, the Supreme Court has stated that "the length of time of wrongful deprivation of benefits" must be strongly considered when weighing the above

factors.  *Fusari*, 419 U.S. at 389.  While the Supreme Court has not defined "a meaningful time" in terms of a distinct time period, it has stated that "[a]t some point, a delay . . .  would become a constitutional violation." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985).

This case is past that point.  Mr. Bean first sought service connection for his disabilities in 1997, **almost 25 years ago**.  Appx0842-0845.  He specifically noted that he had unadjudicated, pending claims in December 2007.  Appx0487-0488. For over **fourteen years**, Mr. Bean has consistently – and procedurally, correctly – raised these issues to the VA, to no avail.  Appx0310, Appx0455-0458, Appx0487-0488.  The VA has not attempted to develop the claims, nor is it waiting for a medical opinion by an overworked system.[15]  *Cf. Martin*, 891 F.3d at 1345-46. Nevertheless, the VA has simply ignored Mr. Bean's pleas or given him erroneous information.

Taken as a whole, the VA's process in this case does not meet any definition of being heard in a "meaningful time," and the court should hold that the VA has violated Mr. Bean's Due Process rights and order that the VA grant Mr. Bean his service-connected benefits.  *See Mathews*, 424 U.S. at 333; *see also Davis v. Passman*, 442 U.S. 228, 241-5, 248-9 (1979) (finding that relief in damages may

---

[15] No development is even required in this case; all of the evidence is right where it was in 1997 – in the file.  Appx0083, Appx0084, Appx0527-0534, Appx0647, Appx0745-0748.

be an appropriate remedy when there is a "cause of action" under the Fifth Amendment); *White v. Mathews*, 559 F.2d 852, 860-61 (2d Cir. 1977) (explaining the court can exercise its remedial power to order payments when inordinate delays resulted in disabled workers not receiving their Social Security benefits in a timely manner).

## CONCLUSION AND RELIEF SOUGHT

The record is clear that Mr. Bean was diagnosed with anxiety in service. The record is also clear that he has a current diagnosis of anxiety and major depressive disorder, just as he did in 1997. Finally, the VA's own examiners have already linked Mr. Bean's anxiety *and* depression to his time in service and the VA has already found that these examination reports were adequate for rating purposes.

The VA has had 25 years to adjudicate these claims; remanding for it to do so, in light of this indisputable evidence that Mr. Bean is entitled to service connection and in light of the VA's complete and utter failure to adjudicate the issues despite Mr. Bean repeatedly pointing out that the VA has not done so since 2007, is an inadequate remedy in this instance. The court should therefore reverse the Veteran Court's decision and order that the VA grant Mr. Bean his service-connected benefits.

Respectfully submitted,

Linda E. Blauhut
Deputy General Counsel

/s/ Jennifer A. Zajac
Jennifer A. Zajac
Associate General Counsel
Counsel for the Appellant
Paralyzed Veterans of America
801 18th Street NW
Washington, DC 20006
760-639-0765
jenniferz@pva.org



**ADDENDUM**

# ADDENDUM TABLE OF CONTENTS

Memorandum Decision,
    entered December 30, 2021  ...................................................................Appx001

Judgment,
    entered January 21, 2022  ...................................................................Appx010

*Designated for electronic publication only*

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-4116

WILFRED D. BEAN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before PIETSCH, *Judge*.

**MEMORANDUM DECISION**

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

PIETSCH, *Judge*: The appellant, Wilfred D. Bean, through counsel, appeals a May 10, 2019, Board of Veteran's Appeals (Board) decision in which the Board dismissed the claim for an effective date earlier than August 14, 2006, for the grant of service connection for post-traumatic stress disorder (PTSD). Record of Proceedings (R.) at 4-11.

In his initial briefing, the appellant did not raise any argument concerning the Board's decision to dismiss this appeal after determining that the May 2012 Board decision denying entitlement to an effective date earlier than August 14, 2006, for service connection for PTSD is final. The appellant did argue in his initial brief that the Board erred when it failed to address whether he had unadjudicated, pending claims for service connection for generalized anxiety and major depressive disorder. The appellant also argued that the Secretary's failure to adjudicate these claims for more than 20 years violates his constitutional due process rights. In the alternative, the appellant contended that the Secretary did not afford him fair process. The Secretary disputed the appellant's arguments.

A single-judge memorandum decision was issued on April 28, 2021, in which the Court found that the Board did err when it failed to address the appellant's assertions that he had unadjudicated, pending claims for service connection for generalized anxiety and major depressive

disorder. And though the Court dismissed the appellant's appeal of the May 10, 2019, decision, the Court remanded the issue of outstanding, unadjudicated claims for the Board to take corrective action to properly address the appellant's argument in an appealable decision.

On May 13, 2021, the Secretary filed a timely motion for reconsideration or, in the alternative, a panel decision. On July 26, 2021, the Court ordered that the appellant file a response to the Secretary's motion for reconsideration or, in the alternative, for a panel decision. On August 24, 2021, the appellant filed a response to the Secretary's motion for reconsideration. The motion for reconsideration is hereby granted; the April 28, 2021, memorandum decision is hereby withdrawn; and this decision is issued in its stead. Single-judge disposition is appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from November 1966 to November 1969. R. at 140. He submitted a claim for disability benefits for post-traumatic stress disorder (PTSD), chloracne, and soft tissue sarcoma on February 24, 1997. R. at 828-31. He thereafter underwent a VA examination in June 1997, at which time he reported having symptoms of depression, anxiety, and panic attacks, and he stated that he is extremely anxious most of the time. R. at 732, 731-34. Based on the evaluation of the appellant, the examiner diagnosed him with major depression that is severe and recurrent, and generalized anxiety disorder. R. at 734. In the July 1997 rating decision, the RO denied entitlement to service connection for PTSD. R. at 727, 727-29. The decision did not address the appellant's diagnosed major depression, severe, recurrent, or his generalized anxiety disorder. The appellant did not appeal this decision.

In August 2006, the appellant filed an informal claim for service connection "for an acquired psychiatric disorder to include major depression and generalized anxiety disorder and/or [PTSD]." R. at 640-42. He stated that the July 1997 rating decision did not discuss his diagnosed major depression or generalized anxiety disorder, or address whether these disabilities are related to his military service. *Id*. He was provided a notice letter in June 2007 that apprised him of the elements required to substantiate his claims for service connection for major depression and generalized anxiety disorder, as well as the petition to reopen his claims for service connection for PTSD. R. at 612-19. The appellant was afforded another VA examination in July 2007, at which time the examiner diagnosed him with chronic PTSD and major depressive disorder, recurrent.

2

R. at 547-49. In the October 2007 rating decision, the regional office (RO) granted service connection for PTSD and evaluated it as 30% disabling, effective August 14, 2006. R. at 494-501. The appellant filed a Notice of Disagreement (NOD) with this decision in December 2007, disagreeing with the 30% rating for his PTSD as well as the effective date assigned for the grant of service connection for his disorder. R. at 488-89.

In a December 2007 statement, the appellant explained that his psychiatric disability had its onset shortly after he returned from Vietnam, as "demonstrated by the fact that [he] received treatment for symptoms [of] an acquired psychiatric disorder while stationed at Ft. Bliss, TX following [his] return from Vietnam." R. at 473. He also contended that his claim for service connection for PTSD constituted a claim for an acquired psychiatric disorder to include his major depression and generalized anxiety disorder as reflected in his VA medical records and June 1997 VA examination. R. at 473-74. In a June 2008 Statement of the Case (SOC), the RO confirmed and continued the 30% rating for the appellant's PTSD, and further denied entitlement to an effective date earlier than August 14, 2006, for the grant of service connection for PTSD. R. at 445-69.

The appellant perfected his appeal of this claim in August 2008. R. at 441-43. In another VA examination, in April 2010, he described his increased psychiatric symptoms. R. at 407-11. The examiner diagnosed him with PTSD and recurrent major depressive disorder. R. at 410. In a May 2010 Supplemental Statement of the Case (SSOC), the RO increased the disability rating for the appellant's PTSD to 70%, effective April 30, 2010, and denied an effective date earlier than August 14, 2006, for the grant of service connection for PTSD. R. at 398-403. The appellant continued to express his disagreement with the effective date assigned for his service-connected PTSD. R. at 376-77.

In a November 2010 rating decision, the RO granted entitlement to a total disability rating based on individual unemployability (TDIU), effective April 30, 2010.  R. at 364-65. In a May 2012 decision, the Board determined that the appellant is entitled to a 70% disability rating for his service-connected PTSD for the entire period on appeal, effective from August 14, 2006. R. at 305-19. With regard to whether the appellant is entitled to an earlier effective date for the grant of service connection for his PTSD, the Board noted that the claim "for entitlement to service connection for PTSD was previously denied in a July 1997 RO decision" and the appellant "did not appeal or submit new evidence within one year of the date of this decision." R. at 320. The

3

Board further observed that the appellant submitted an application to reopen his claim for service connection for PTSD in May 1998 that was denied in October 1998 because he did not submit any new or material evidence and the appellant, once again, did not appeal or submit new evidence within 1 year of this decision. R. at 320-21. The Board ultimately found that August 14, 2006, was the earliest day for which the appellant could receive entitlement to service connection for PTSD. R. at 321. The Board acknowledged the appellant's complaints that the RO failed to consider evidence that he was treated for nervousness and anxiety in service in the July 1997 rating decision. *Id*. According to the Board, "[i]f the appellant believes that the RO made a mistake in its decision, he can file a claim alleging clear and unmistakable error (CUE) in the July 1997 RO decision." *Id*. The appellant did not appeal the May 2012 Board decision to the Court, and in the September 2012 rating decision, the RO effectuated the May 2012 Board decision. R. at 275-95.

In July 2012, the appellant submitted a statement (date-stamped in September 2012) to the RO, in which he requested that the May 31, 2012, Board decision be reconsidered. R. at 296-97. In this statement, the appellant asserted that that his original claim for service connection for PTSD constituted a claim for an acquired psychiatric disability to include generalized anxiety disorder, and major depression. R. at 296. According to the appellant, VA's failure to schedule him for a VA examination to determine the etiology of these disorders left his claims unadjudicated. *Id*. The appellant then requested that the RO reconsider the effective date assigned for the grant of service connection for his PTSD. *Id*.

In a September 2013 rating decision, the RO determined that an evaluation of 70% is continued from August 14, 2006, the date the RO received his claim for service connection, and that "[t]here is no evidence of record to show that [the RO] received a claim for service connection pr[io]r to that date." R. at 231-38. The appellant submitted an NOD appealing the effective date assigned for the grant of service connection for PTSD in September 2013. R. at 223-24. In a September 2015 Statement of the Case (SOC), the RO confirmed the denial of an earlier effective date, prior to August 14, 2006, for the grant of service connection for PTSD. R. at 37-59. The appellant perfected his appeal in October 2015. R. at 35.

In the May 2019 decision here on appeal, the Board determined that the May 2012 Board decision is final and dismissed the appeal of an earlier effective date for service connection for PTSD. R. at 9. Following this decision, the appellant filed a timely Notice of Appeal on June 11, 2019. Yet on March 2, 2020, the appellant also filed with the Court a petition for extraordinary

4

relief in the form of a writ of mandamus. *See* Petition for Writ of Mandamus, *Bean v. Wilkie*, U.S. Vet. App. No. 20-1518 (Date Entered Mar. 3, 2020). On March 3, 2020, the appellant filed a motion to stay the proceedings on his appeal pending a Court decision on his petition for a writ of mandamus in *Bean v. Wilkie*, No. 20-1518. In his March 2, 2020, petition, the appellant requested that the Court issue a writ "order[ing] the Secretary to issue a decision on the 1997 claims for service connection for depression and anxiety." Petition for Writ of Mandamus, *Bean v. Wilkie*, No. 20-1518, at 7 (Entered Mar. 3, 2020). The appellant also argued in his petition that he had "repeatedly asked for the Secretary to adjudicate his claims, to no avail.". *Id.* at 14.

In his April 9, 2020, response to the petition, the Secretary asserted that, "on April 4, 2020, VA issued a decision . . . determining that the [RO] decision dated July 11, 1997, did not contain CUE and that the decision did not leave unadjudicated any claims for service connection for generalized anxiety disorder and major depression because neither of those conditions were ever claimed." Secretary's Response to Petition for Extraordinary Relief, U.S. Vet. App. No. 20-1518, at 3 (Apr. 9, 2020). The Secretary contended that the requested relief had been granted, and if the appellant disagreed, he could participate in VA's appeals process and file his disagreement with the decision. *Id* at 4. The Secretary requested that the Court dismiss the appellant's petition, because the relief the appellant sought had already been provided to him. *Id*.

In an April 27, 2020, decision on the March 2, 2020, petition, this Court held that the appellant had not demonstrated that he lacked adequate alternative means to attain the relief he desires, specifically adjudication of claims for service connection for generalized anxiety and major depressive disorder. *Bean v. Wilkie*, U.S. Vet. App. No. 20-1518, at 4 (Apr. 27, 2020, order). In particular, the Court found that the appellant had not explained "why his appeal from the May 2019 Board decision or initiating review of the April 2020 rating decision are not adequate remedies. " *Id*. at 3 The Court went on to note that the Board had acknowledged the appellant's contention that his claims for service connection of anxiety and depression remained pending, and that the April 2020 rating decision had found that the 1997 rating decision "'did not leave any unadjudicated claims for service connection for generalized anxiety disorder and major depression because neither of these conditions were ever claimed.'" *Id*. Thus, the Court found that the appellant "has alternative means to correct any errors in the May 2019 Board decision and the April 2020 rating decision. " *Id.* Therefore, the Court denied the appellant's petition for a writ of mandamus. *Id.* at 4.

5

## II. PARTIES' ARGUMENTS

The appellant contends that the Board erred when it failed to address the issue of whether he had unadjudicated pending claims for service connection for generalized anxiety and major depressive disorder. Appellant's Br. at 13-14. According to the appellant, "[t]here is no question that there are unadjudicated, pending claims" because his service treatment records reflected a diagnosis of anxiety reaction disorder and the 1997 VA examiner diagnosed him with major depressive disorder and anxiety. *Id*. at 15; *see also* R. at 69-70, 731-34. The appellant maintains that the July 1997 rating decision noted that the appellant had current diagnoses of anxiety and depression, but the RO did not adjudicate these disorders and address whether he could be service connected for these disorders. *Id*. The appellant also contends that because the RO did not adjudicate these claims, "they have 'remain[ed] in an unadjudicated state.'" *Id*. at 16. In addition, the appellant notes that the May 2019 Board decision acknowledged the appellant's claim "that he had unadjudicated, pending claims for service connection for generalized anxiety and major depressive disorder, but did not directly address the issue." *Id*. Furthermore, the appellant contends that the Secretary's failure to adjudicate the appellant's claims for over twenty years violates his constitutional due process rights. *Id*. at 18-19.

In response to the appellant's assertions, the Secretary contends that these arguments relate to claims for service connection that are not before this Court. Secretary's Br. at 8. Per the Secretary, should the Court find that the appellant did present an argument in relation to the claim on appeal, "the Court should affirm the Board's decision" because "[a]ppellant's arguments fail to demonstrate any error in the Board's consideration of the claim on appeal." *Id*. The Secretary maintains that the appellant wishes "to involve the Court in the adjudication of claims which, by his own argument, are still pending before the Agency," and "none of the argument[s] [a]ppellant does provide demonstrate any failure in the Board's decision." *Id*.

## III. ANALYSIS

In the May 10, 2019, decision on appeal, the Board determined that the claim for an effective date prior to August 14, 2006, for the grant of service connection for PTSD must be denied as a matter of law, and the Board dismissed the claim. R. at 4-11.

In his May 13, 2021, motion for reconsideration or, in the alternative, for a panel decision, the Secretary argued that in its April 28, 2021, memorandum decision, the Court exceeded its

6

jurisdiction by reviewing a question outside the scope of the May 10, 2019, Board decision. Secretary's Motion for Reconsideration at 3. The Secretary also asked that the Court reconsider its decision because it improperly relied on the Court's holding in *Robinson v. Peake*, 21 Vet.App. 545, 552-56 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). *Id.* at 6. Specifically, the Secretary contends that in relying on this decision, the Court overlooked the fact that "*Robinson* was limited to the Board's consideration of all arguments and theories presented in relation to the claim before the Board." *Id.*; *see also Robinson v. Peake*, 21 Vet.App. at 553.

The Court agrees with the Secretary's contention that the matter raised by the appellant exceeds the Court's jurisdiction. The appellant, in his brief, neither asserts error in the Board's decision nor provides any reasons why he believes the Board's decision was wrong. Though the appellant contends that he has unadjudicated, pending claims for service connection for generalized anxiety and major depressive disorder and that the Board erred when it failed to address these claims, this argument is not related or pertinent to the issue of entitlement to an earlier effective date for the grant of service connection for this disorder—which was before the Board in the decision now on appeal. And though the Board noted the appellant's contentions "that the Board should have considered whether he should have been service-connected for depression and anxiety from 1997 since his original claim had been for an 'acquired psychiatric disorder' and not just PTSD," the content of the Board decision focused on a different issue altogether. The Court sympathizes with the appellant's situation, but the only issue addressed in the May 2019 decision is whether he was entitled to an effective date earlier than August 14, 2006, for the grant of service connection for his PTSD. Thus, the Court does not possess jurisdiction over the issue raised by the appellant in his brief–specifically whether the Board erred in failing to address whether the appellant had unadjudicated, pending claims for service connection for generalized anxiety and major depressive disorder dating back to 1997.

The Court recognizes the appellant's assertions that his July 2012 statement demonstrates his effort to comply with the May 2012 Board instructions to file a motion for revision based on clear and unmistakable error if he wished to challenge the Board's decision. Appellant's Br. at 16-17. According to the appellant, the RO "mistook [his] filing for a freestanding claim for an earlier effective date and denied [the appellant's] claim." *Id*. at 17. In the May 2019 decision, the Board noted that in the May 2012 decision, the Board denied entitlement to an effective date earlier than August 14, 2006, for the grant of entitlement to service connection for PTSD, and the

7

appellant did not appeal this decision to the Court. R. at 5-9. The Board noted that the appellant's current claim arose from an NOD the appellant submitted in response to the September 2013 RO decision regarding his July 2012 request for "reconsideration" submitted to the RO. *Id*. According to the Board, the issue on appeal "has already been addressed by the Board in a final, unappealed decision, and cannot be revisited in the absence of a motion for reconsideration or a motion of CUE in the May 2012 Board decision." R. at 7-8.

The Board also considered whether the July 2012 request for reconsideration sent to the RO can be construed as a motion for reconsideration, revision, or vacatur–but "even with a liberal reading of the [appellant's] communications, none rise to the level of a motion for reconsideration, revision, or vacatur." R. at 8. In this regard, these types of motions "must be in writing, must be submitted directly to the Board, and must set forth the alleged basis for requesting the motion." *Id*. According to the Board, "[g]eneral statements of dissatisfaction with the Board decision or some other aspect of the VA claims adjudication process will not suffice." *Id*. Because "the appellant did not submit his July 2012 request for reconsideration directly to the Board and he did not allege any error of fact or law in the May 2012 Board decision," then "the matter is res judicata" and "the issue of entitlement to an effective date earlier than August 14, 2006 for the grant of service connection for PTSD decision must be denied as a matter of law." *Id*.

The appellant does not raise any arguments about the matter decided by the Board in its May 2019 decision. Thus, the Court will dismiss the appeal regarding the determination that the May 2012 Board decision denying entitlement to an effective date earlier than August 14, 2006, for the award of service connection for PTSD is final and denying the appeal as a matter of law. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993) (stating that issues not raised on appeal are deemed abandoned); *see also Tellex v. Principi*, 15 Vet.App. 233 (2001) (dismissing the appeal when the appellant failed to address the claim on appeal and the Court lacked jurisdiction over the matter addressed by the appellant.) When an appellant fails to address that part of the Board decision that is on appeal, and the Court does not have jurisdiction over the matter raised by the appellant, the Court generally will dismiss the appeal. *See Tellex v. Principi*, 15 Vet.App. 233, 240 (2001); *Jarvis v. West*, 12 Vet.App. 559 (1999).

## IV. CONCLUSION

Based on the above, this appeal of the Board's May 10, 2019, decision is DISMISSED.

8

DATED:  December 30, 2021

Copies to:

Jennifer Zajac, Esq.

VA General Counsel (027)

9

*Not Published*

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

NO: 19-4116

WILFRED D. BEAN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

## JUDGMENT

The Court has issued a decision in this case, and has acted on a motion under Rule 35 of the Court's Rules of Practice and Procedure.

Under Rule 36, judgment is entered and effective this date.

Dated: January 21, 2022

FOR THE COURT:

GREGORY O. BLOCK
Clerk of the Court

By: /s/ Brooke Bragunier
Deputy Clerk

Copies to:

Jennifer A. Zajac, Esq.,

VA General Counsel (027)

# CERTIFICATE OF SERVICE

I certify that on April 4, 2022, I electronically filed the foregoing Appellant's Brief

with the U.S. Court of Appeals for the Federal Circuit by using this court's

CM/ECF system, which sends notice of the filing to all registered CM/ECF users.

/s/ Jennifer A. Zajac

**JENNIFER A. ZAJAC**
Associate General Counsel
Paralyzed Veterans of America
801 18th Street NW
Washington, DC 20006
jenniferz@pva.org
760-639-0765

**CERTIFICATE OF COMPLIANCE**

Counsel for Appellant hereby certifies that:

1. The brief complies with the type-volume limitation of U.S. FED. R. APP. PRO. 32(a)(7)(B)(i), because, exclusive of the exempted portion, it contains 10,622 words as counted by the word processing system used to prepare the brief; and

2. The brief complies with the typeface requirements of U.S. FED. R. APP. PRO. 32(A)(6) because it has been prepared using Microsoft Office Word for Mac 2011 in proportionally spaced typeface, Times New Roman, 14 point font.

/s/ Jennifer A. Zajac

**JENNIFER A. ZAJAC**
Associate General Counsel
Paralyzed Veterans of America
801 18th Street NW
Washington, DC 20006
jenniferz@pva.org
760-639-0765
